May I reserve five minutes for my reply? You have a clock in front of you, and whatever is left on the clock, you can have when you sit down. Oh, thank you. May it please the Court, I am Bradley Paul Elley here on behalf of plaintiffs' appellants, the Feagins, and I would like to assure, be assured that the justices have read my supplemental authorities that I submitted and filed last Monday on this matter. If you filed them, they should be here. Is there anything in particular you want to refer to? The first one was actually the district court case. I've certainly read everything that I've received, but could you just explain or identify what you want to verify and I can? Yes, thank you. In Wolf Performance Ammunition, there is a very cogent quote from the Stachowicz v. Nissan Motor Corporation case. And I will quote this Smith case. It also cites a Ninth Circuit court of appeals opinion, and it says, quote, a plaintiff need not produce direct evidence of a specific product defect or negate any alternative causes of the accident. An unexpected dangerous malfunction suffices. That's what we have here, Your Honor, Your Honors. We have an unexpected dangerous free-falling elevator. And no expert testimony is required in that situation because that's the common experience of the juror's exception. Counsel, if we rule in your favor on the product liability question, you'll go back to the district court and you will go to trial because discovery has closed, and what evidence will you be able to provide other than the testimony of your clients? I do have disclosures made by all of the defendants' respondents in the early case conference. I do have some limited, rather evasive discovery responses from them. I have the witnesses disclosed. So I am prepared to go forward. I would take issue with the characterization that discovery had closed. I cited the Transamerica case, A Ninth Circuit court of appeal opinion from this very court, that said when there is a superseding order staying a matter or adjoining a matter, that the previous order is not just suspended, it is voided where it is impossible to comply. But the district court has ruled that discovery is closed. Is that correct? Yes. Okay. And are you asking this court to order the district court to reopen discovery? Yes. I believe their ruling was erroneous, as was the magistrate's ruling on this, because the controlling authority, the Transamerica case, says quite clearly if it is impossible to comply with a scheduling order, you have to do a new scheduling order. How is it impossible for you to comply with the scheduling order? Okay. It looks to me like you sat on your rights for a long time. Well, it's impossible because the scheduling order said I had to disclose expert witnesses when the stay was in effect. That's impossible. Then the stay was lifted, and then the Court said that the case was to return to the regular litigation track. And I think there were about 6 weeks left between then and the close of discovery, right? Yes, but the scheduling order was void. So there was a need for the defendants to honor the order saying, go ahead and file your answer. And they waited more than 2 months to do that. So they willfully violated an order of the Court saying file your answer. April 27, 2012, was the deadline for them to amend their pleading. They never had a pleading, Your Honors. They never filed a pleading by the April 27th deadline. And so they wait 2 months in violation of the order, 2 months to do anything. And the only reason they did something was I sent the ethics letter saying you must file your response. You're overdue. You're in default. But I read your brief, and this part of your brief doesn't make a lot of sense to me because I'm not sure if you're arguing, you know, they violated it, too. That's what it sounds like to me, as opposed to explaining or providing an answer to Judge Bybee's question. How was it impossible for you to comply? I may reiterate here, controlling Ninth Circuit authority says you must do whatever scheduling order where it is impossible to comply with the existing scheduling order. It wasn't impossible for you to comply after May of 2012. Between May and June and then July and August, it's finally in July or in August that you get around to asking for an extension of discovery. So what happened in the interim there? In the interim, there was no scheduling order. The magistrate was supposed to, he's required by local rule to, in this situation, to tell the parties to convene and file some sort of stipulated scheduling order, all parties, Your Honor, not just the plaintiffs, all parties, and then go with that. But once you have a void scheduling order, you don't honor it anymore. Once you have parties who have willfully violated an order saying file your responses, they're in default. But because they're in default, you have no duty to proceed with the litigation until they said get the answer filed. So if we have no scheduling order, then there is no deadline to comply with it. Counsel, let's just suppose, purely hypothetically, I'm not speaking for the Court or even for myself necessarily right now. I'm just asking you a hypothetical. If we were to disagree with you on the need to reopen or the correctness of reopening discovery, are you still prepared to go to trial on the products liability question? Absolutely, Your Honor. Okay. Absolutely. I've shown the res ipsa locator applicable law for elevators that the Nevada Supreme Court has promulgated for both negligence, premises liability, and for the products liability. Those cases How fast did the elevator drop? How fast did it drop? In three seconds, it went 20 stories, Your Honor. So it exceeded the authorized State of Nevada elevator speed by almost twofold, threefold. And it clearly violated that speed. And I believe the Court has seen the video, so they can see the horrific example of what a malfunctioning elevator does. And in particular, recall that Otis is saying that this is not a malfunction. That is a strange statement to be making because what that means is they designed this elevator to function to overspeed intentionally. And in the Jeep v. Murray Corporation case, that's clearly when you know that something is malfunctioning or is defective and you do nothing about it, that's grounds for punitive damages. That's what they've said, that this free-falling elevator was designed to go that speed in violation of Nevada law and that there would be no need to alter this elevator. There's no reason to change it because it's designed and performed the way it was intended, to basically violate Nevada law and to scare the occupants halfway to death, which is what happened. These people, all they did was push the button. Now, there was a kid hopping, a little 7-year-old hopping. Okay. But let's recall as well, Your Honors, the defense has produced no expert witnesses either. They have made arguments that, well, you shouldn't be hopping in an elevator, but that's not supported by any expert testimony.  And so they have made arguments that there's been a propensity of occupants since the early 60s and that they've done nothing about it. If there's a foreseeable – if you call this misuse, which is their burden of proving, but if you consider that, they still have to say that somehow they have designed this elevator to anticipate this misuse so that people are not harmed. And that was not done here. So what's good for the goose is good for the gander in this case, Your Honor. If I'm not allowed expert witnesses, I do have Mr. Carr of Fremont, California. I have retained him, so I had an expert. But if I'm not allowed to go forward with an expert, I can still submit this to the jury with my clients indicating, as they did in the summary judgment opposition, that they merely pushed the button and the next thing they know, they thought they were going to die. Three seconds of pure terror, Your Honor. That is not a normal situation. Oh, I'm running out of time. Thank you. Okay. We'll hear from the other side. Good morning, Your Honor. It's Rebecca Mastrangelo for the defendant, Otis Elevator Company. Through the original discovery plan, as well as the agreed-upon extension, the plaintiffs had 9 months for discovery, and of those 9 months, there were 49 days that the stay was in effect, and a stay, by the way, which was occasioned by the obligation of post-security. Before the stay took place, the defense completed all of their discovery, which was needed in this case, written discovery, 11 depositions out of state, and various subpoenas. Had you filed your answer? No, we had not, Judge, and the reason why we went forward with discovery, despite the fact that we had not answered, there were motions to dismiss pending, so therefore we didn't need to answer. By the time the stay was lifted, that's when the judge returned us to the normal litigation course, and at that point, discovery was essentially complete. Mr. Ele then sent us the letter reminding us that we had neglected to file the answer, and they were filed almost immediately and within the time frame that he requested. Were you late with your answer? No, we were not. Both before and after the discovery stay was in place, other than brief sets of written discovery that the plaintiffs propounded to each defendant, the plaintiffs undertook no discovery whatsoever. They did not request any depositions of the defendants. They did not request that an expert inspect the elevator. After that stay was lifted, as you pointed out, there was another seven weeks that the plaintiffs could have moved for more time under a good cause standard. They didn't move at that point. They didn't move until five weeks after the discovery period closed and after the defendants both filed their motions for summary judgment. Is this an abuse of discretion standard regarding the discovery order? Yes, Your Honor. I believe it is an abuse of discretion standard, and the trial court specifically addressed that, as well as the magistrate below on several different hearings and requests for reconsideration. What if we agree with you on that point? What about the need for an expert? The need for an expert, Judge, case law throughout the country provides that because elevators are complex pieces of machinery. So are we talking about, forgive me for interrupting, but are we talking about Nevada or are we talking about throughout the country? Throughout the country. Why are we talking about throughout the country? Nevada has not specifically ruled on whether or not elevators are complex pieces of machinery. We do have the Daniel Mann case, which says that events or products which are outside the common knowledge of laypersons require expert testimony. Okay. But look at the, I don't know if it, is it Stachowicz? Maybe I should just call it the Nissan case because that's so much easier. Of course, Stachowicz is not so hard. Maybe. That's an automobile. And what they said, that's a complex piece of machinery, too. But what they said, I think, if I can sum up, is jurors know it's not supposed to veer off the road. And we all know elevators aren't supposed to come crashing down. I know I took the stairs myself this morning having read these briefs. So what's wrong with that? Two points on that, Judge. One, on the Stachowicz case, that was almost a brand-new automobile. And it's important to note that every case cited in that Stachowicz decision also referenced a brand-new product. And brand-new products should not have a defect which causes them to fail. And in addition, I think every juror has experience driving or being in an automobile, and they should know that the steering, how the steering wheel is supposed to function. How would that be different from people riding in elevators? We have a tape. We can see the tape for ourselves. I've reviewed it. This doesn't look like this is ordinary behavior of any elevator that I've ridden in. So why isn't that sufficient to get to a jury, even without an expert, without reopening discovery? Understood. There are several reasons why an elevator will come to an abrupt stop. And before I address that specifically, there's absolutely no evidence on that videotape or otherwise that this was a three-second drop, that this was a free-falling elevator, or that it went a certain speed or dropped with a certain force. There are many reasons that an elevator will come to an abrupt stop, and many of them are by design. But wait a minute. Are we talking the problem doesn't seem to be they're not complaining about the abrupt stop. They were happy about the abrupt stop. It's the free fall that they're not. And that's what I keep coming back to. There's no evidence that that elevator free fell. All we have is what's shown on the videotape, which does not show either a malfunction, doesn't show a defect in the product, and it certainly doesn't trace it back to three years prior. The bodies that are falling at that kind of speed and then come to an abrupt stop have an involuntary response. And it just looks very difficult to coordinate a family of five, especially one involving small children, to fake such a dramatic episode. So if you look at the tape, it certainly looks like something happened on that elevator, and it doesn't look ordinary. I agree. Something happened. But there are reasons that an elevator would behave that way. There could be an anomaly in the run of the elevator, in which case we want it to bring itself to a stop. We want it to shut down. We don't want it to be. Okay. But if there's an anomaly, why isn't that why might that not be actionable? Judge, we're talking about a strict product defect case is the only claim against Otis Elevator in this case. What's the difference between an anomaly and a defect? This elevator existed from 2006. Hundreds of thousands of people have ridden in that elevator in those three and a half years. And if there was a defect that existed from 2006, there's nothing in the records that indicates it ever manifested itself prior to this time. We don't know if it was a product. Okay. So it's a one in a million chance. Why isn't this that chance? How could that be a product defect that existed for three years if it never manifested itself before? It simply could have been a power surge in the building, could have been from the jumping. But now you're providing, forgive me for interrupting, but now you're providing alternate explanations. And that's what the Michelin case talks about. If there is an alternate explanation. Right. If your client comes forward with that, then we may have a different case. But at this stage of the game, if you will, we don't have that yet. So why don't they, getting back to Judge Bybee's question, why doesn't the complaint survive at least this far? We're not claiming that there are alternative theories. We're saying the plaintiff has zero evidence that it was a product defect existing from manufacture that caused this. Right. But that's what the Michelin case says, where a product, even a complex product, behaves in a way that it ought not, and jurors can grasp that. They get past that hurdle, I think, under Nevada law. But simply because an elevator comes to a stop doesn't indicate there is a defect or a malfunction. That's the link that we're missing. Well, again, you're skipping right over the free fall before you get to the stop. It's the free fall they're complaining about, counsel. Well, if it's a power surge, that may be the Trump Hotel's problem rather than Otis's problem. But that's not within their control, and that seems to me maybe something that you and Trump ought to be discussing. But there simply is no evidence of a free fall. All we have is a child falling in an elevator. No. We had five people in an elevator who reacted very strongly. Yes, Your Honor. I mean, they claim they were in free fall. They claim a free fall. They have no evidence that it was a free fall. That is the evidence, counsel. They're in a box with no surroundings to judge how fast they are going. Is it your position? I think people know what free fall feels like. But I'm curious about this, you know, your argument about saying, well, you know, it's been hundreds of thousands of people who have ridden in elevators. It's never happened, so there can't be a defect. But if you posit a power surge, it may just be that there hasn't been a power surge and that the defect lies in the elevator's inability to adequately deal with a power surge. It's one of the risks. An elevator can operate for years without having such an event. And at the same time, it's supposed to be able to handle such an event because it's foreseeable. So why doesn't that sort of defeat your hypothesis? It could also be just a spontaneous failure of a part through no neglect or no defect. Mechanical things can break down all the time. You know, in certain kind of conveyances like airplanes and elevators and stuff like that, you sort of expect that parts that are going to wear out, you know, during flight are going to be redundant so that thing doesn't come down automatically. That's why they have, you know, multiple engines on passenger planes and stuff like that. So you would think that the fact that a part malfunctions would be one of those things that would be anticipated. You can sit down, sir. Your turn will come. Hovering there is not going to get you any faster. The wearing out of parts is foreseeable. So that's why you have maintenance program. And then things that conveyances like trains, airplanes, elevators that carry people's lives in them are supposed to be such that they survive the malfunction of a part without causing injury. Otherwise, nobody would get in an elevator because you'd think, gee, you know, what if that big rope in the sky frays, right? What's going to happen? I've always sort of assumed that you could cut that cord with both cutters and the elevator wouldn't drop. I have sort of assumed this to be the case. If you tell me that, well, a part malfunctioning is going to cause the elevator to drop into free fall, then I'm going to join Judge Kristol in taking the stairs. It will be healthier. I like the stairs anyway. But, you know, that's sort of the thing. There's expectations. The expectation is that a malfunctioning part or a surge in power, all these things are expected. Life is like that. Life is grainy. And the device is supposed to function in a way that does not cause damage to the people inside, even if something like that happens. And if not, maybe that's a defect in itself. Well, I agree, Judge. There's no evidence that anything malfunctioned here, and there's no evidence that the elevator didn't operate properly as it was designed when it sensed the problem, whatever that was. Just accept, you know, because we're not going to make any advance on the question I would like to have answered if you keep fighting the hypothetical. Just accept that the testimony of the five inhabitants plus the video is enough to show, to put before the jury, the question of a malfunction. So just swallow that bitter pill, okay? So we now have a malfunction. So what is your answer to that question? I mean, you've given a couple of answers. One of them is, oh, well, it could have been a surge, which was Trump's fault, or it could have been a malfunctioning part and all that. But why aren't all of those things, why isn't the proper design of an elevator, which, you know, drops long distances, to survive such things, such incidents, without having damage to the people inside? Because I think in that case, the reasonable expectation of a consumer would be that if this elevator is starting to freefall, and that's what is accepted by the jury, that the elevator will bring itself to an abrupt stop so that it doesn't go crashing to the cement floor and have a catastrophic loss. So that the complex machinery behaved the way it was intended by arresting itself. That's your case. And that is a safety device. And I believe the case law is clear that when you want to challenge a design defect, you do require an expert to show there was a safer, more feasible design, and that this company chose not to implement it. Okay. So I can see the trial playing out that way. I just come back to the question, I think it was Judge Bybee posed earlier, which is why at this juncture would it be appropriate to rule in favor of your client? Why don't they get past this hurdle? Because there simply is no evidence at all. We maintain that you do need an expert. However, the case doesn't rise and fall on whether or not an expert is here. Even without an expert, they have nothing other than what's shown on that videotape, which does not trace a defect back to 2006 after this elevator has been in use for a thousand days. Hundreds of thousands of passengers have ridden it. How can they trace that back to 2006 and say there was a manufacturing defect? I thought their theory was not only defect in manufacture, but it was also the possibility of a defect in maintenance. Maintenance has not been alleged against Otis Elevator Company. It's only been alleged against the Trump. Again, it sounds like something that you and Trump may want to get together and negotiate out. I'm not sure why they have to be involved in that discussion. The plaintiff did not sue Otis for negligent maintenance. That's why I have not addressed that. Okay. Thank you. We'll give you a couple of minutes. Thank you, Judge. I appreciate it. Judge, my name is Josh Aiklin. I represent the Trump organizations in this lawsuit. And as counsel said, the allegations against Trump are those of negligent maintenance and premises liability. But the plaintiff never did their discovery in order to find any evidence of a breach of duty by Trump, either for premises liability or for negligent maintenance of the property. Trump's duty under Nevada law is to hire a licensed elevator company, which it did. The employees of Trump cannot touch those elevators. You have to be a licensed elevator mechanic. So Trump hired Otis, which are licensed elevator mechanics. And I believe they're the largest in the world, and they certainly go back for hundreds of years. So Trump met its duty by hiring a licensed elevator mechanic. So there's no evidence of negligence in the maintenance of this matter. And also, there's no evidence of a dangerous condition on the property. Again, plaintiff never went and got an expert. He never did any discovery in order to determine why that elevator came to a sudden stop. There are many reasons. Let's go back to the maintenance contract. This is just trying to remember agency law from law school. If Trump has a duty to maintain the elevator and it hires a company to do it, how does that absolve, how does the fact that they've hired an agent to discharge their duty, discharge of their duty, if the agent is negligent, isn't there a respondeat superior liability on the part of the principal? Well, actually, Otis would not be respondeat superior with Trump because Otis isn't Trump's employee. And I don't believe there would be an agency. Well, wouldn't there be an agency? No, it would be an independent contract between the two parties. All right. Maybe it's an independent contract. So this would be an independent contract. But can Trump absolve himself of liability by hiring somebody else to do the job? I mean, let's say you're a doctor and you get hired to do surgery on somebody. And you, you know, something happens that day, you slam your fingers in the door or something of your car, and so you get another doctor to do the surgery. Do you absolve yourself of liability by getting somebody else to do your duty? I don't know. I thought you didn't. I thought that that other person may also be independently liable, but I don't think you can absolve yourself of your duty by hiring somebody else to do it for you. I would agree with the court that there is a non-delegable duty of a landowner to keep the premises reasonably safe. That's a non-delegable. That's what I was saying. And you are correct. That is a standard. But then we go back to that there's no evidence of breach of that duty by either Trump in the maintenance or that there was a dangerous situation. Right. But what you said about how, hey, we're off the hook because we hired Otis, and Otis goes back to B.C. in handling elevators, you know, that doesn't absolve you of anything. I mean, it just means you hired somebody that you were pretty confident wouldn't let you down. But if they did, no matter how good your decision was in picking the agent or independent contractor, whatever you want to call it, it wouldn't absolve you. I mean, if they're negligent, you're negligent. Right? Well, we do have the non-delegable duty, as I said. I'm sorry? We do have a non-delegable duty, as I said. So if they're negligent, if Otis was negligent, then Trump was negligent. No, sir. They haven't alleged negligence against Otis. So what they've alleged is a product defect, obviously, which doesn't apply to Trump. So you could separate the two analyses. And what I'm saying here is that they've claimed that Trump has been negligent. They claim negligence against Trump and a defect against Otis. Okay. And negligence against Trump can be manifested in any number of ways, including the fact that they hired an agent who was negligent or an independent contractor who was negligent. That is possible. But in this scenario, I don't think it's been proved by the plaintiff because they don't have the evidence to prove that there was a breach of duty by Trump. Okay. But the mere fact that you hired an agent doesn't absolve you of responsibility. We now have to look and see whether this is alleged against maintenance. That would be correct. Okay. Why don't you speak to that? Well, Your Honor, the plaintiffs conducted no discovery in order to determine why the elevator came to a sudden stop. The video that you're showing, and the reason that we don't have more information about this is because the plaintiffs had the duty of proof and production and did not do it. So if plaintiffs had designated an expert properly, then the defendants would have designated an expert properly and there would be much more information before the court, which in fact would show the court that the elevator did not freefall. It came to a sudden stop. So the reason that your record — But why are those inconsistent? Forgive me for interrupting, but why are those inconsistent? Because a sudden stop is a safety mechanism. If there is a problem in the operation of the elevator, it will come to a sudden stop rather than crash into the ground. But what you said is that it didn't do a freefall. It came to a sudden stop. How do you know it didn't do a freefall? We've been talking all morning about how there's evidence of a freefall. Because you would be — if you watch the videotape. We have watched the videotape. And well, I — well, then I would submit to you, Your Honor, that the videotape doesn't show evidence of a freefall. It shows evidence of a sudden stop. Well, if it comes to a sudden stop and somebody gets hurt, why isn't that actionable? Because there's many reasons. The sudden stop is actually a safety mechanism. Good. That's — you know, bless everybody. They didn't get hurt as badly as they might have if it hadn't had a sudden stop. It still doesn't answer the question why you might not be liable if somebody gets hurt on the sudden stop. Well, because, Your Honor, it's not strict liability. The plaintiffs have to prove what caused it to come to a sudden stop. I mean, at least as to you, as to Trump. Correct. Exactly. They have to show breach of duty to show negligence against the landowner. Trump is not in the business of manufacturing elevators. So they have to have affirmative evidence of negligence by Trump, either in the maintenance of the elevator or that it was a dangerous condition that was known to Trump and that they didn't take any action on. And there is no evidence of that. And just the last point is their only allegations are negligence, and Nevada's substantive law is clear. You cannot get punitive damages on claims of negligence in Nevada.  So what kind of an order do you want this court to issue? Affirming the summary judgment granted to Trump for the negligence causes of action and also the punitive damages claim. So the entire action, the summary judgment is affirmed as to the Trump entities. Okay. And that we could do and still leave the strict liability in place? Yes, sir. They're two separate causes. Okay. And I would imagine you would want an order affirming the discovery order as well. Yes, ma'am. But you left that part out, but I just want to be clear. Yes, you're correct. I would. Okay. Thank you. Thank you very much. I appreciate your time. Counsel, is there any direct evidence of negligence as to the Trump defendants? Well, yes, Your Honor. In fact, what was never discussed was the res ipsa locator application. Okay. So if you're relying on res ipsa for negligence, it seems to me that under Nevada law you would have to show that the instrumentality was in the exclusive control of Trump, and your complaint alleges that the maintenance contract was with Otis. It was the non-delegable duty, Your Honor. It's located in the Trump Tower hotel facility. The fact that they have a licensed elevator repair person work on it does not absolve them of liability for assuring reasonably that that elevator is properly functioning. Okay. So that's the conclusion. But I would like you to speak to can you tell me why I'm wrong, and this is truly a ‑‑ I don't ‑‑ I pretend to be an expert in Nevada law, but it's truly a question. Am I wrong that Nevada law requires showing that the elevator was within the exclusive control of Trump in order to hold them responsible under that theory? Yes, but it is within the exclusive control under the non‑delegable duty, Your Honor. So is that no, I'm not wrong, or yes, I'm wrong? I said am I wrong that you have to show exclusive control, and you said ‑‑ You are correct. Okay. You have to show exclusive control in Trump, which we have done, which is not in dispute. And you did that by showing that it's in their hotel? Yes. Okay. What about the landmark hotel and casino case? I'm sorry. I'm not ‑‑ I don't recall that case. Okay. All right. I would like to say that on page 6 of my brief, it does clearly indicate that the defendants had the duty to file their answer, and they could not wait two months. The scheduling order said amend by April 27th. They filed it on July 20th. So that statement that there was no ‑‑ that they could violate the court's order to proceed with litigation is simply not true. And I believe that the punitive damages, the fourth claim for relief, does apply to the negligence. There were no maintenance ‑‑ there was no maintenance performed on this elevator based upon the discovery that I did propound and did get responses to. I got interrogatory responses. I got production of document responses. I got requests for admissions. Evasive, yes, but I did do that. So ‑‑ Counsel, you don't have a negligence claim against Otis? No, I do not, because in Nevada, that would allow them to use the affirmative defense of comparative negligence for some reason. I didn't want that. I didn't want them to be able to use that, so I left that out. I thought it was an obvious case of malfunction, and the previous court decisions seem to indicate that under both negligence and products liability and premises liability theories. Okay. Thank you. Thank you. The case is argued in a sense of minutes.
judges: Kozinski, Bybee, Christen